<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                              :
OBADIAH NEELY,                :
                              :          Civil Action No. 05-1310 (JAG)
              Petitioner,     :
                              :
        v.                    :
                              :          O P I N I O N
RONALD CATHEL, et al.,        :
                              :
              Respondents.    :
_____:
```

**APPEARANCES:**

Obadiah Neely, <u>Pro</u> <u>Se</u>
New Jersey State Prison
#166273B/261535
P.O. Box 861
Trenton, NJ 08625

Catherine A. Foddai
Assistant Prosecutor
Bergen County Prosecutor's Office
Bergen County Justice Center
Hackensack, NJ 07601
Attorney for Respondents

**GREENAWAY, JR., District Judge**

Petitioner, Obadiah Neely, filed the within petition for a
Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.  Respondents
filed a Response to the Petition on August 26, 2005.  On January
23, 2006, Petitioner filed a motion to stay the Petition.  The
motion was denied on May 31, 2006.  This Court has considered all
submissions.  For the reasons set forth below, the Petition will
be denied.

**BACKGROUND**

1.   Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Superior Court of New Jersey, Appellate Division's ("Appellate Division") factual recitation:

> Defendant entered a liquor store managed by Mansong Choi intending to purchase one can of beer. Defendant walked to a beer cooler and attempted to remove one can of beer from a six-pack of beer.  Choi directed defendant to a separate cooler which contained single cans of beer.  Defendant replaced the single can of beer that he had removed from the six-pack and proceeded to the cooler containing single cans of beer. He purchased the beer and left the store.
>
> Shortly thereafter defendant returned to the liquor store.  Defendant brandished a handgun and ordered Choi to enter a back room which served as the store's office.  Defendant demanded money and began to rifle through the office desk.  Choi gave defendant his wallet.  Defendant then ordered Choi to return to the front room.  He ordered Choi to lie on the floor while defendant began to remove cash from the cash register. While defendant was removing the money from the cash register, another patron, Louis Waibel, entered the store.  Defendant, still brandishing his weapon, ordered Waibel to lie on the floor opposite Choi. Defendant then removed Waibel's wallet containing cash and two checks payable to Waibel.  Defendant ordered Choi and Waibel to remain on the floor and not to rise until each had counted to one hundred.  Defendant than fled.
>
> After defendant left the premises, Choi and Waible waited a short time then stood up.  Waibel, who was terrified, indicated that he did not want to be identified and asked Choi not to reveal that he had been present.  Choi agreed and Waibel left.  Choi proceeded to telephone 911 but did not mention Waibel.

The police immediately responded to Choi's 911 telephone call.  Choi advised the police that his assailant was a black male, six-foot three-inches tall, thin, with short black hair, and wearing a white-striped short sleeved shirt with dark pants.  Choi indicated his assailant was carrying a silver handgun which might have been an automatic.  Choi did not indicate that Waibel had also been a victim.

Later that evening Waibel decided to reveal his involvement in the robbery.  Waibel went to the police, identified himself as a robbery victim, and provided the police with the following description: a black man, young and muscular, with short hair, a long neck, oval fingernails, wearing a green and white pull-over shirt. Waible agreed to assist a police artist in preparing a sketch of the robber.  Waibel was unsatisfied with the artist's first rendition.  A second sketch was then prepared.  Although Waibel was still not satisfied with the second sketch, he did indicate the second rendition looked more like the robber than the first.

The investigating police also canvassed the immediate area.  Another employee at a nearby shop informed the police that shortly after the time that the robbery occurred, he noticed a red vehicle without a license plate leave the rear of the liquor store driving at an accelerated speed.  The employee testified at trial.  The State also established that when defendant was apprehended he was driving a red motor vehicle without a licence plate.

During the police investigation, a latent fingerprint was discovered on the bottom of the desk in the rear office of the liquor store.  A sheriff's officer attempted to match that print to fingerprints of defendant which were on file with the police department.  This attempt was apparently unsuccessful. At a subsequent date, the State had the same latent print compared with the file copy of defendant's prints by two other forensic experts with greater forensic experience than the sheriff's officer.  Both experts would thereafter testify that the latent print did match the index finger print on defendant's right hand.

\* \* \*

After Waibel provided the police with a description, and after he assisted in preparing two

police sketches, Waibel was shown a photo array of
eight men.  The array consisted of two columns of four
photographs.  Waible identified the fourth photograph
in the first column as the robber.  That photograph
which was identified as "number four" was marked and
signed by Waibel.  Within a few weeks, Waibel was asked
to participate in an identification line-up utilizing a
one-way glass.  The line-up consisted of eight black
men standing side-to-side.  Each man had been given a
placard bearing a number.  Waibel identified the
individual holding placard number four as the robber.
The individual so identified was defendant.

Defendant did not testify at trial.  Defendant's
defense was predicated upon a theory of
misidentification developed by his counsel through
cross-examination of the State's witnesses.

(State v. Neely, A-444-97T4 (Dec. 10, 1998), pp. 4-7;

Respondents' Exhibit "RE" 5).

2.   Procedural History

On January 12, 1995, a Bergen County Grand Jury indicted

Petitioner on four counts, including: first-degree robbery,

contrary to N.J. STAT. ANN. § 2C:15-1 (counts one and two);

second-degree possession of a weapon for an unlawful purpose,

contrary to  N.J. STAT. ANN. § 2C:39-4a (count three); and third-

degree unlawful possession of a weapon, contrary to N.J. STAT.

ANN. § 2C:39-5b (count four).

A pretrial hearing was conducted, pursuant to United States

v. Wade, 388 U.S. 218 (1967).  The trial court held that the

procedures employed during the out of court identifications of

Petitioner by Waibel were not unduly suggestive, and evidence of

4

the identifications was found admissible.  Petitioner's pro se motion to dismiss the indictment was also denied.

From June 4 through June 10, 1997, Petitioner was tried by jury in the Superior Court of New Jersey, Law Division, Bergen County ("Law Division").  The jury found Petitioner guilty on all counts.  After the verdict, the trial court denied Petitioner's motion for a judgment of acquittal notwithstanding the verdict because of insufficient evidence.

On July 11, 1997, Petitioner was sentenced to an aggregate sentence of life imprisonment with a 25-year parole ineligibility period, pursuant to New Jersey law concerning mandatory extended terms of imprisonment for second offenders using a firearm.  See N.J. STAT. ANN. §§ 2C:44-3d and 2C:43-7c.

Petitioner appealed his conviction and sentence to the Appellate Division.  On December 10, 1998, the convictions were affirmed, but the matter was remanded for a sentencing correction.  Petitioner petitioned the New Jersey Supreme Court for certification, which was denied on February 24, 1999.  See State v. Neely, 158 N.J. 74 (1999)(Table).

On October 28, 1999, Petitioner filed a pro se petition for post-conviction relief ("PCR") in the trial court.  Counsel filed a petition on Petitioner's behalf on March 4, 2003.  A non-evidentiary hearing was conducted on April 23, 2003, and the PCR motion was denied.

On June 3, 2004, the Appellate Division affirmed the denial of the PCR petition.  On September 29, 2004, Petitioner's petition for certification to the New Jersey Supreme Court was denied.  See State v. Neely, 181 N.J. 549 (2004)(Table).

The instant petition was filed on March 7, 2005.  On April 13, 2005, Petitioner was advised of his rights, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On August 26, 2005, Respondents filed an Answer and the state court record.

## DISCUSSION

### A.  Petitioner's Claims

Petitioner asserts the following arguments for habeas relief:

1.  The out-of-court identifications by Louis Waibel were the product of impermissibly suggestive police procedure, and Waibel's out-of-court and in-court identifications were unreliable and should have been excluded.

2.  The State's failure to disclose before trial that Mansong Choi identified someone else as the perpetrator deprived defendant of a fair trial.

3.  The methods used by the State in order to obtain an indictment in this case violated defendant's right to due process of law as enunciated in the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and the Constitution of New Jersey.

4.  The prosecutor deprived defendant of his Fifth and Sixth Amendment right[s] to due process of law enunciated in the United States Constitution.

5.  Ineffective assistance of counsel at trial led to a miscarriage of justice in violation of defendant's Fifth, Sixth, and Fourteenth Amendment rights, requiring a reversal in the case before the bar.

6

     6.    There was a gross insufficiency of evidence in this case, violating due process of law and leading to a conviction for a crime that should have been dismissed against defendant.

Petition for Writ of Habeas Corpus, ¶ 12.

Petitioner has raised the instant claims before the New Jersey state courts.  To the extent that any of the claims are not exhausted, this Court exercises its discretion to decide them on the merits, in accordance with 28 U.S.C. § 2254(b)(2).

**B.**    <u>**Standards Governing Petitioner's Claims**</u>

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u> <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert.</u> <u>denied</u> 534 U.S. 919 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(citing <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1). The Court analyzed subsection 1 as two clauses: the "contrary to" clause and the "unreasonable application" clause. The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" clause unless a state

8

court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Pursuant to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001).  In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations.  See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-

supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to a less stringent standard than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).

## C.   Petitioner's Claim Regarding the Out-of-Court Identification by Waibel (Ground One)

In this case, a pre-trial hearing was held pursuant to United States v. Wade, 388 U.S. 218 (1967). Petitioner's counsel argued that the physical line-up should be suppressed at trial. Counsel submitted that it was suggestive for the law enforcement officers to refer to Petitioner as "number four" in the photo array, and then to assign him number four in the line-up. The

10

trial court found that the identifications were sufficiently reliable to be presented at trial. (RE 15 at pp. 3-34). The trial judge held:

> The criterion the Court has to determine is really based on [Neil v. Biggers], . . . it goes back to, and that is the concern the Court has for what is termed as a - the primary evil that has to be avoided is "a very substantial likelihood of irreputable misidentification." And that's the concern that the Supreme Court has issued. State versus Wade sets up the criteria in which there is a - while the Wade is a photo line up, there's also the array- the physical line up here which is - the concern is that again there is a suggestive - and suggestion that creates a substantial likelihood of misidentification. Each case must be considered on its own facts, and that conviction is based on eye witness identification at trial following a pre-trial identification by either photograph or - photo or a physical line up.
>
> If the procedure - the identification of the photographic identification or procedure of the physical line up was so impermissibly suggestive as to give rise to a very substantial likelihood of irreputable misidentification- that's Simms versus U.S. (phonetic)- that's really what we're concerned with here.
>
> The Court follows the criteria set down by State versus Heard (phonetic) which is a 1981 New Jersey Supreme Court case at 86, and this particular witness that we're talking about - Werbel- is that his name? Werbel is a victim of the alleged armed robbery. I have no information as to how that robbery is to – is alleged to have been taken- taken place. I'll assume that for the purpose of this - this event that he had an opportunity to view the - the perpetrator and that there was a certain degree of attention. Accuracy of the witness, prior identification of the criminal. He has [sic] given a photo array which indicated some- that he was black. I see here it's a black male, six foot six, weighed 200 pounds, slim build, age 20 to 25- all of that seemed to have matched the - the defendant. Whether the picture itself- the artist depicted him is - is a question that can be argued. I would conclude

or agree with defense counsel that may not be as an [sic] accurate drawing as you would like but that may be because of the artist's problem.

The lapse of time between the crime and the confrontation here I think is sufficient to add support.  The matter was April 5 I believe - I mean August 5.  Is that - August 6th was the event.  The display- the photo array took place shortly after that, and then the line up which is within the same month, a couple of weeks later in Union County.  He did tell-tell the- the identifying witness that it's possible that he might be there.  Make sure - be sure that - who it is.  He said he was absolutely sure and he picked out number four.  The fact that the numbers corresponded between the photo array of number four and then number four of the live line up I find to be coincident.  There's no indication whatsoever that it was set up in such a way that - that it was a signal to the identifying witness.

He indicated that when he saw the photo array he immediately identified photograph number four which was the defendant.  There were six black males and the Court had an opportunity to review the photo of the individuals in the live line up and they were all wearing the same clothes.  The only thing different would be the numbers in front of them for the purpose of identification.

He was given every opportunity.  He was told what he was going to review with regard to the photo array, and he indicated he understood what his task was.  He traveled down to Union County for the purposes of viewing individuals through a one way glass, and he immediately chose the defendant again who was holding number four.  I find that the suggestiveness that the defense counsel suggests is non-existent, and therefore I'm going to permit the State to use the photo array and use the line up- live line up if he chooses to.  I find that there's no undue suggestion.

(RE 15 at pp. 31-34).

Citing Wade, as well as other Supreme Court of the United

States cases, the Appellate Division agreed with the trial

12

judge's finding that the identification of Petitioner was not unduly suggestive.  (RE 5 at pp. 7-9).

While the Sixth Amendment does not require that defense counsel be present when a witness views police or prosecution photographic arrays, see United States v. Ash, 413 U.S. 300 (1973), an accused nevertheless is entitled to due process protection against the introduction of evidence of, or tainted by, unreliable identifications elicited through an unnecessarily suggestive photographic array, id. at 320; Manson v. Brathwaite, 432 U.S. 98, 110-17 (1977); Simmons v. United States, 390 U.S. 377 (1968) (due process prohibits in-court identification if pre-trial identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification").

The Supreme Court has recognized that "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." Simmons, 390 U.S. at 383.  The Court has identified certain procedures that heighten the risk of misidentification, including such practices as displaying the photo of only a single individual who generally resembles the person the witness saw, showing the witness photos of several persons among which the photograph of a single individual recurs or is in some way emphasized, or indicating to the witness that police have other evidence that one of the persons pictured

13

committed the crime.  See id.  Despite the risk of

misidentification, the Supreme Court has not prohibited the

employment of photographic identification methods, either in the

exercise of its supervisory power or as a matter of

constitutional requirement.  See id.  Instead, the Court has

required that each case must be considered on its own facts and

must be evaluated in light of the totality of surrounding

circumstances; also, the Court has noted that the risk of

conviction based on photo misidentification "may be substantially

lessened by a course of cross-examination at trial which exposes

to the jury the method's potential for error."  Id.

        Where there has been an unnecessarily suggestive pre-trial

photographic identification of a suspect,

> reliability is the linchpin in determining the
> admissibility of identification testimony ... .  The
> factors to be considered ... include the opportunity of
> the witness to view the criminal at the time of the
> crime, the witness' degree of attention, the accuracy
> of his prior description of the criminal, the level of
> certainty demonstrated at the confrontation, and the
> time between the crime and the confrontation.  Against
> these factors is to be weighed the corrupting effect of
> the suggestive identification itself.

Manson, 432 U.S. at 114 (citing Neil v. Biggers, 409 U.S. 188,

199-200 (1972)).  "[C]onvictions based on eyewitness

identification at trial following a pretrial identification by

photograph will be set aside on that ground only if the

photographic identification procedure was so impermissibly

suggestive as to give rise to a very substantial likelihood of

14

irreparable misidentification." <u>Simmons</u>, 390 U.S. at 383; <u>see also</u> <u>Stovall v. Denno</u>, 388 U.S. 293, 302 (1967).

Where a trial court has failed to exclude identification evidence obtained in violation of a defendant's due process or Sixth Amendment rights, the habeas court must determine whether the failure to exclude that evidence was harmless constitutional error under <u>Chapman v. California</u>, 386 U.S. 18 (1967). <u>See</u> <u>Moore v. Illinois</u>, 434 U.S. 220, 232 (1977).

The Court of Appeals for the Third Circuit has explained that the

> <u>Simmons/Stovall</u> inquiry is essentially two-pronged. The first question is whether the initial identification procedure was "unnecessarily" or "impermissibly" suggestive.  This inquiry actually contains two component parts: "that concerning the suggestiveness of the identification, and that concerning <u>whether there was some good reason for the failure to resort to less suggestive procedures</u>."  If a procedure is found to have been unnecessarily suggestive, the next question is whether the procedure was so "conducive to ... mistaken identification" or gave rise to such a "substantial likelihood of ... misidentification" that admitting the identification would be a denial of due process.

<u>United States v. Stevens</u>, 935 F.2d 1380, 1389 (3d Cir. 1991) (citations omitted) (emphasis added by Third Circuit).

Here, the findings of the Appellate Division that the identifications were not tainted by any impermissibly suggestive government identification techniques, and that they were sufficiently reliable to be admissible, are neither contrary to nor an unreasonable application of clearly established federal

law, nor are they based upon an unreasonable determination of the facts.

This Court has reviewed the record and finds no constitutional violation concerning the Waibel identification. Further, the jury was able to consider the reliability of the identification, make credibility determinations as to the eyewitness, and consider all factors in making its decision.

In this case, the jury found Petitioner guilty. Nonetheless, Petitioner has not demonstrated that the actions of the state courts, which applied the proper federal law, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Accordingly, this ground for seeking a writ of habeas corpus will be denied.

**D.   Petitioner's Claim Regarding the State's Failure to Disclose (Ground Two)**

Petitioner argues that the State failed to disclose to the defense prior to the first day of trial that Mansong Choi identified somebody else as the perpetrator of the crime from a photographic array.  The Appellate Division explained the occurrence as follows:

16

The victim Choi also participated in a photo array identification.  At the conclusion of that photo array, the investigating police officer filed a written report indicating that Choi had failed to make a positive identification of the robber from the faces depicted in the photo array.

On the morning of defendant's trial, the prosecutor learned for the first time that after Choi was presented with the photo array, he had, in fact, made an identification of one of the photographs as being the robber.  Since the photograph Choi selected was not the photograph of defendant, the officer indicated in his report that Choi had not made a positive identification.  It is abundantly clear that the written report of the investigating officer erred when it indicated that Choi had not made a positive identification.

The prosecutor attempted to circumvent the fact that Choi had selected a person other than the defendant as the robber during the photographic array.  He requested that defendant be permitted to stand to allow Choi to identify him in the courtroom.  Defendant's counsel's objection to the prosecutor's request that defendant rise was sustained.  While defendant remained seated, Choi was asked to identify the robber, and Choi did, in fact, then identify defendant.

The following day, defense counsel immediately moved for a mistrial.  Although defendant's motion was denied, the judge struck the testimony of the preceding day, including the in-court identification by Choi of defendant.  The judge also provided the jury with a lengthy special jury instruction that it was to disregard the in-court identification and not to consider the identification as evidence during its deliberations.

(RE 5 at pp. 10-11)(footnote omitted).

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where

the evidence is material either to guilt or to punishment,
irrespective of the good faith or bad faith of the prosecution."
See also Giglio v. United States, 405 U.S. 150, 154 (1972) ("A
finding of materiality of the evidence is required under
Brady."); United States v. Bagley, 473 U.S. 667, 682 (1985) (in
which the Supreme Court held that, regardless of request,
favorable evidence is material, and constitutional error results
from its suppression by the government, "if there is a reasonable
probability that, had the evidence been disclosed to the defense,
the result of the proceeding would have been different").  For
Brady purposes, there is no distinction between exculpatory and
impeachment evidence.  See Kyles v. Whitley, 514 U.S. 419, 433
(1995) (citations omitted).

Nondisclosure merits relief only if the prosecution's
failure "'undermines confidence in the outcome of the trial.' "
Kyles, 514 U.S. at 434 (quoting Bagley, 473 U.S. at 678).  There
is, however, "no general constitutional right to discovery in a
criminal case, and Brady did not create one."  Weatherford v.
Bursey, 429 U.S. 545, 559 (1977) (citing Wardius v. Oregon, 412
U.S. 470, 474 (1973) ("the Due Process Clause has little to say
regarding the amount of discovery which the parties must be
afforded ... .")).

The Appellate Division cited Brady, and held:

. . . Here, it is quite evident from the record that
the State discovered the discrepancy in the

18

investigating officer's report on the morning of trial. The State did not attempt to suppress the evidence, and the facts as presented failed to reflect or permit an inference that the State acted inconsistently with notions of fair play and due process.

Despite the absence of a <u>Brady</u> violation, on defendant's motion, the judge directed the jury to disregard Choi's in-court identification of defendant and provided the jury with a lengthy and detailed instruction appropriate to its ruling.  Additionally, defendant was permitted to cross-examine the investigating police officer and Choi on the issue of misidentification and was still permitted to argue to the jury that Choi had not selected defendant's photograph during the photographic array.  The error in the officer's report was utilized by the defense to bolster defendant's case.  Clearly defendant was not harmed by this inadvertent error.

(RE 5 at pp. 11-12)(citations omitted).

A review of the record indicates that Petitioner's counsel addressed Choi's misidentification on cross-examination (RE 15 at pp. 165-170), and extensively in summation (RE 17 at pp. 70-75). It also seems clear, as the Appellate Division pointed out, that the State did not suppress any evidence available to it.  The State courts applied the correct federal law and reasonably applied the facts.  While the jury did not reach the conclusion that Petitioner would have preferred, it cannot be said that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Therefore, this ground for seeking a writ of habeas corpus is denied.

**E.  Petitioner's Claims Regarding the Grand Jury and Indictment (Grounds Three and Four)**

Petitioner argues that the State's methods in obtaining the indictment were unconstitutional, warranting habeas relief. Petitioner raised this argument on direct appeal in his <u>pro se</u> brief.  He argued that, when first presented to the grand jury, his case was "no billed."  Two years later, the State presented the same evidence to the grand jury, but "changed the importance" of the partial fingerprint identified as Petitioner's, in order to secure the indictment against Petitioner.  (RE 4 at p. 2). The Appellate Division found that this argument was "clearly without merit."  (RE 5 at p. 18).

Petitioner also argues that the State failed to present exculpatory evidence to the grand jury.  He raised this issue in his <u>pro se</u> brief on appeal.  Citing <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), Petitioner argued that the prosecutor failed to inform the second grand jury that the first attempt to indict Petitioner was unsuccessful, and that Choi had chosen someone other than Petitioner as the perpetrator.  (RE 4 at p. 5).  The Appellate Division found that this argument was without sufficient merit to warrant discussion.  (RE 5 at p. 18).

Generally, deficiencies in state grand jury proceedings are not grounds for relief under § 2254.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).  This conclusion flows from United States v. Mechanik, 475 U.S. 66 (1986), in which the Supreme Court held that a violation of Fed. R. Crim. P. 6(d) (which governs who may be present while the grand jury is in session, deliberating, or voting), discovered only at trial, did not justify relief after the petit jury had rendered its verdict.

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt.  Measured by the petit jury's verdict, then, any error in the grand jury proceedings connected with the charging decision was harmless beyond a reasonable doubt.

Mechanik, 475 U.S. at 70 (footnote omitted); see also United States v. Console, 13 F.3d 641, 671-72 (3d Cir. 1993) (with the exception of a claim of racial discrimination in the selection of grand jurors, a petit jury's guilty verdict renders harmless any prosecutorial misconduct before the indicting grand jury) (citing Vasquez v. Hillery, 474 U.S. 254 (1986)).  Thus, to the extent there were any deficiencies in the grand jury proceedings, they must be considered harmless.  Petitioner is not entitled to relief on these claims.

**F.   <u>Petitioner's Ineffective Assistance of Counsel Claim (Ground Five)</u>**

Petitioner argues that his counsel was ineffective for failing to file a motion to have the indictment dismissed prior to trial on the grounds that the State did not present exculpatory evidence.  Petitioner did not present this issue to the state courts; however, this Court notes that Petitioner did file a <u>pro se</u> motion to dismiss the indictment, which was considered and denied by the trial court prior to trial.  The trial court ruled, prior to the start of the trial and after the <u>Wade</u> hearing:

> Okay.  Based upon nobody testifying at least live as to the events itself except by hearsay, and I – I have reviewed the transcript of the – of the– of the Grand Jury and also reviewed the cases and the law in this matter, and there's law right on – right on point here.  It's well established than an indictment may be based largely or wholly on hearsay and other evidence which may not be legally competent or admissible in a plenary hearing or a trial, and that's [<u>State v. Bennett</u>] . . . .  That the State is required to present at least a prima facie case and they did in this – in this incident.  The – the detective who testified here today [at the <u>Wade</u> hearing] testified before the Grand Jury and relayed just what it was that he [had] done through his investigation and identified the defendant as the possible person who – who would be responsible for the crime.  ...
>
> "Unless the Prosecutor's conduct before a Grand Jury infringes upon a jury's decision making function it may not be based – it cannot be a basis for dismissal of the indictment – that it's hearsay evidence."  Hearsay testimony is permissible, and in this case I am going to – I have no problem with the presentation before the Grand Jury.  I'm going to deny your motion for – it is without merit, and secondly because it's rather late.  We have a jury picked and

we're ready to proceed.  The indictment was handed up
in 1995- January.  It's now June 1997.

(RE 15 at pp. 38-40)(citations omitted).

In Strickland v. Washington, 466 U.S. 668 (1984), the
Supreme Court held that in order to establish that trial counsel
is ineffective, the petitioner must show that "counsel's
performance was deficient," in that "counsel made errors so
serious that counsel was not functioning as 'counsel' guaranteed
. . . by the Sixth Amendment," and "that the deficient
performance prejudiced the defense."  Id. at 687.  In order to
establish prejudice, the defendant must show "a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different."  State v.
Fritz, 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at
694).  "In any case presenting an ineffectiveness claim, the
performance inquiry must be whether counsel's assistance was
reasonable considering all the circumstances."  Strickland, 466
U.S. at 688.

The Supreme Court further explained:

Judicial scrutiny of counsel's performance must be
highly deferential. It is all too tempting for a
defendant to second-guess counsel's assistance after
conviction or adverse sentence, and it is all too easy
for a court, examining counsel's defense after it has
proved unsuccessful, to conclude that a particular act
or omission of counsel was unreasonable.  A fair
assessment of attorney performance requires that every
effort be made to eliminate the distorting effects of
hindsight, to reconstruct the circumstances of
counsel's challenged conduct, and to evaluate the

23

conduct from counsel's perspective at the time. Because
of the difficulties inherent in making the evaluation,
a court must indulge a strong presumption that
counsel's conduct falls within the wide range of
reasonable professional assistance; that is, the
defendant must overcome the presumption that, under the
circumstances, the challenged action "might be
considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.
1020 (1996).

Based on the record, it is clear that Petitioner's
ineffective assistance claim has no merit and does not warrant
habeas relief.  Petitioner's claim that counsel was ineffective
for not filing a motion to dismiss is unpersuasive.  Petitioner
himself presented a motion to dismiss the indictment to the trial
court, which the trial court considered and denied.  Although the
trial court noted the untimeliness of the motion, the trial judge
reviewed the transcript and rendered a decision on the merits
that there was "no problem with the presentation before the Grand
Jury." (RE 15 at p. 39).  Thus, whether or not counsel had filed
the motion earlier, the claims were examined and denied on the
merits.

Petitioner has demonstrated neither that counsel's
performance was deficient, nor that the results of the trial, or
the motion to dismiss in this case, would have been different.
This ground is not an appropriate basis for granting a writ of
habeas corpus.  The motion is denied.

24

**G.**   **Petitioner's Claim Regarding Insufficiency of Evidence (Ground Six)**

Petitioner argues that the State did not present enough proofs to convict him.  This Court construes the claim as asserting that the verdict was against the weight of the evidence.  The Appellate Division examined this claim on direct appeal and found it to be without merit to warrant discussion. (RE 5 at p. 18).

A claim that the jury's verdict was against the weight of the evidence is "essentially a matter of state law, and does not raise a federal constitutional question unless the record is completely devoid of evidentiary support in violation of Petitioner's due process." Douglas v. Hendricks, 236 F. Supp.2d 412, 435-36 (D.N.J. 2002)(Walls, J.)(citation omitted).  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).  This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Id. at 324 n.16; see also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  State court factual determinations are presumed to be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).

Here, Petitioner does not dispute that the State adequately proved that the crimes were committed.  He disputes only the adequacy of the proof as to identity.   A review of the record in this case demonstrates sufficient evidence against Petitioner in support of his conviction.  The fingerprint evidence found at the scene of the crime was presented, along with the eyewitness testimony.  The jury weighed the credibility of the evidence and concluded that Petitioner was guilty.  Petitioner presents no reason for the Court to disturb that finding.  Accordingly, this ground is not a sufficient basis for granting a writ of habeas corpus and shall be denied.

## CONCLUSION

For the foregoing reasons, the petition seeking the issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as is required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


Dated: October 18, 2006

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.